1  Behrooz Shariati (State Bar. No. 174436)
   bshariati@jonesday.com
2  JONES DAY
3  1755 Embarcadero Road
   Palo Alto, CA 94303
4  Telephone:    (650) 739-3939
   Facsimile:    (650) 739-3900
5
6  Attorney for Plaintiff
   XILINX, INC.
7

8                UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11 
                                        Case No. 3:11-cv-00671 SI
12 
                                        FIRST AMENDED COMPLAINT FOR
13 XILINX, INC.,                         DECLARATORY JUDGMENT OF
                                        LACK OF STANDING, AND PATENT
14         Plaintiff,                    NON-INFRINGEMENT AND
       v.                                INVALIDITY
15 
   INTELLECTUAL VENTURES LLC,            DEMAND FOR JURY TRIAL
16 INTELLECTUAL VENTURES
   MANAGEMENT LLC,
17 INTELLECTUAL VENTURES I LLC,
   INTELLECTUAL VENTURES II LLC,
18 
         Defendants.
19 

20
21     Xilinx, Inc. ("Xilinx" or "Plaintiff"), by and through its undersigned counsel, complains

22 against Intellectual Ventures LLC, Intellectual Ventures Management LLC, Intellectual Ventures

23 I LLC, and Intellectual Ventures II LLC, as follows:

24
                            **NATURE OF THE ACTION**
25
26     1.   In this action, Xilinx seeks a declaration that certain products made, used, sold, or

27 imported by Xilinx ("the Accused Products") do not infringe several patents asserted by

28 Defendants against Xilinx ("the Asserted Patents"). Xilinx also seeks a declaration of invalidity

and unenforceability of the Asserted Patents, and a declaration that certain of the defendants who have accused Xilinx of infringing the Asserted Patents do not have standing to assert these patents against Xilinx.

## THE PARTIES

2. Xilinx is a Delaware corporation with its principal place of business at 2100 Logic Drive, San Jose, California 95124. Xilinx is engaged in the business of designing, developing, and marketing complete programmable logic solutions, including advanced integrated circuits, software design tools, predefined system functions delivered as intellectual property cores, design services, customer training, field engineering, and customer support.

3. Upon information and belief, Defendants Intellectual Ventures LLC ("Intellectual Ventures"), Intellectual Ventures Management LLC ("IV Management"), Intellectual Ventures I LLC ("IV I"), and Intellectual Ventures II LLC ("IV II") are Delaware limited liability companies each with their principal place of business at 3150 139th Avenue SE, Building 4, Bellevue, Washington 98005.

4. Upon information and belief, each of the Defendants is in the business of acquiring, licensing and/or enforcing patents and patent portfolios.

## JURISDICTION AND VENUE

5. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, under the patent laws of the United States, Title 35 of the United States Code. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202.

6. This Court has personal jurisdiction over Defendants by virtue of their sufficient minimum contacts with this forum as a result of the business they conduct within the State of California and within the Northern District of California.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

## INTRADISTRICT ASSIGNMENT

8. For purposes of intradistrict assignment pursuant to Civil Local Rules 3-2(c) and 3-5(b), this Intellectual Property Action is to be assigned on a district-wide basis.

## THE PATENTS-IN-SUIT

9. The United States Patent and Trademark Office (the "USPTO") issued United States Patent No. 6,252,527 ("the '527 patent"), entitled "Interface Unit for Serial-to-Parallel Conversion and/or Parallel-to-Serial Conversion," on June 26, 2001. On May 19, 2011, the USPTO granted *ex parte* reexamination of Claims 1-5, 8, 15, 17-22, 27, 29, 32, and 33 (of the 34 claims) of the '527 patent on the basis that a substantial new question of patentability exists as to those claims in light of prior art that was not previously before the USPTO.

10. The USPTO issued United States Patent No. 6,408,415 ("the '415 patent"), entitled "Test Mode Setup Circuit for Microcontroller Unit," on June 18, 2002. On May 21, 2011, the USPTO granted *ex parte* reexamination of all claims of the '415 patent on the basis that a substantial new question of patentability exists as to those claims in light of prior art that was not previously before the USPTO.

11. The USPTO issued United States Patent No. 6,687,865 ("the '865 patent"), entitled "On-Chip Service Processor for Test and Debug of Integrated Circuits," on February 3, 2004. On May 3, 2011, the USPTO granted *ex parte* reexamination of all claims of the '865 patent on the basis that a substantial new question of patentability exists as to those claims in light of prior art that was not previously before the USPTO.

12. The USPTO issued United States Patent No. 6,698,001 ("the '001 patent"), entitled "Method for Generating Register Transfer Level Code," on February 24, 2004.

13. The USPTO issued United States Patent No. 7,080,301 ("the '301 patent"), entitled "On-Chip Service Processor," on July 18, 2006. On May 2, 2011, the USPTO granted *inter partes* reexamination of all claims of the '415 patent on the basis that a substantial new question of patentability exists as to those claims in light of prior art that was not previously before the USPTO, and has issued an Office Action rejecting those claims.

## DEFENDANTS AND THEIR ACTIVITIES IN CALIFORNIA

14. Defendants Intellectual Ventures and IV Management were founded in 1999 and 2000, respectively, by Nathan Myhrvold, Edward Jung, Peter Detkin and Greg Gorder. Defendants Intellectual Ventures and IV Management have the same directors and management

and otherwise appear to operate as a single entity.

15. In a recent complaint filed with the U.S. International Trade Commission, IV Management stated that it "oversees the entire family of companies known in the industry . . . as 'Intellectual Ventures.'" Certain Dynamic Random Access Memory and Nand Flash Memory Devices and Products Containing Same, Inv. No. 337-TA-__, USITC Docket No. 2829 (July 12, 2011), ¶ 7.

16. Together Intellectual Ventures and IV Management make up what has been called one of the world's largest patent holding companies. Intellectual Ventures and IV Management claim to own rights to more than 30,000 patents and patent applications, which they acquire, group into portfolios, and market to investors through their private IP funds ("IP Funds").

17. Intellectual Ventures and/or IV Management maintain an office and employees within this District. Upon information and belief, Mr. Joe Chernesky, a Vice President and General Manager of Intellectual Ventures and IV Management's Hardware Intellectual Property group, and Mr. Mark Wilson, a Licensing Executive, both work at Intellectual Ventures and IV Management's Silicon Valley office.

18. In 2004, Xilinx was approached by Intellectual Ventures and IV Management about becoming an investor in one of their IP Funds, Intellectual Ventures Fund I ("Fund I"). During the course of the negotiations, representatives from Intellectual Ventures and IV Management, including Peter Detkin and/or Gregory Gorder, communicated with Xilinx by email and telephone, and attended in-person meetings with Xilinx in California.

19. In 2005, following extensive negotiations, Xilinx and various companies related to Intellectual Ventures and IV Management executed several agreements pursuant to which Xilinx became a limited partner of Fund I. Xilinx's representatives executed the agreements in San Jose, California on behalf of Xilinx.

20. In 2008, after several months of negotiations again initiated by representatives from Intellectual Ventures and IV Management, Xilinx became a non-managing member of Intellectual Ventures Fund II ("Fund II").

21. Also in 2008, Defendants Intellectual Ventures and/or IV Management, and their

1  affiliate Fund I, issued acquisition notices informing Xilinx that Fund I acquired an interest in the
2  '865 and '301 patents.
3      22. In 2009, Defendants Intellectual Ventures and/or IV Management, and their affiliate
4  Fund II, issued an acquisition notice informing Xilinx that Fund II acquired an interest in the
5  '527, '415, and '001 patents.
6      23. In or about the summer of 2010, Intellectual Ventures and IV Management
7  contacted Xilinx to request Xilinx make additional investments in the Funds and take licenses to
8  certain patent portfolios belonging to the Funds which together contained over 500 patents.
9  Intellectual Ventures and IV Management refused to consider granting Xilinx licenses to
10 individual patents, and Xilinx declined to pay for licenses to the portfolios.
11     24. In December 2010, Intellectual Ventures and IV Management again began to
12 pressure Xilinx into making additional investments in Fund I and Fund II. As part of its
13 campaign, representatives from Intellectual Ventures and IV Management, including Mr.
14 Chernesky, sent Xilinx emails and met with Xilinx in person at Xilinx's headquarters in San Jose
15 and at Xilinx's counsel's offices in Palo Alto.
16     25. In an email dated December 7, 2010, Mr. Chernesky identified 16 patents (including
17 the Asserted Patents) that Intellectual Ventures and IV Management claim are infringed by
18 certain Xilinx products. Shortly thereafter, Intellectual Ventures and IV Management provided
19 Xilinx with claim charts that are identified as having been prepared by Intellectual Ventures
20 and/or IV Management, and that purport to map claim terms of some of the Asserted Patents on
21 Xilinx's Accused Products.

## FIRST COUNT

### (Declaratory Judgment of Lack of Standing to Enforce the '527 Patent)
### (Against Defendants Intellectual Ventures and IV Management)

25     26. The allegations contained in paragraphs 1 through 25 are incorporated by reference
26 as if fully set herein.
27     27. Defendants Intellectual Ventures and IV Management, through their representatives,
28 have accused Xilinx of infringing the '527 patent and have pressured Xilinx into taking a license

to the '527 patent. Despite Intellectual Ventures' and IV Management's accusations and attempts to enforce the '527 patent, Defendants now claim IV Management and Intellectual Ventures do not now have, nor have they ever had, any rights to assert or enforce the '527 patent.

28. Under all the circumstances in this dispute, Intellectual Ventures and IV Management have, at a minimum, created a substantial, immediate, and real controversy between the parties as to whether Intellectual Ventures and IV Management has standing to enforce the '527 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Intellectual Ventures and IV Management within the meaning of 28 U.S.C. § 2201.

29. A judicial declaration that Intellectual Ventures and IV Management lack standing to enforce the '527 patent is necessary and appropriate in order to resolve this controversy. Xilinx is also entitled to an injunction enjoining Intellectual Ventures and IV Management from initiating infringement litigation and from threatening Xilinx with infringement litigation or charging them either verbally or in writing with infringement of any claims of the '527 patent.

## SECOND COUNT

**(Declaratory Judgment of Lack of Standing to Enforce the '415 Patent)**

**(Against Defendants Intellectual Ventures and IV Management)**

30. The allegations contained in paragraphs 1 through 29 are incorporated by reference as if fully set herein.

31. Defendants Intellectual Ventures and IV Management, through their representatives, have accused Xilinx of infringing the '415 patent and have pressured Xilinx into taking a license to the '415 patent. Despite Intellectual Ventures' and IV Management's accusations and attempts to enforce the '415 patent, Defendants now claim IV Management and Intellectual Ventures do not now have, nor have they ever had, any rights to assert or enforce the '415 patent.

32. Under all the circumstances in this dispute, Intellectual Ventures and IV Management have, at a minimum, created a substantial, immediate, and real controversy between the parties as to whether Intellectual Ventures and IV Management has standing to enforce the '415 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Intellectual Ventures and IV Management within the meaning of 28 U.S.C. § 2201.

33. A judicial declaration that Intellectual Ventures and IV Management lack standing to enforce the '415 patent is necessary and appropriate in order to resolve this controversy. Xilinx is also entitled to an injunction enjoining Intellectual Ventures and IV Management from initiating infringement litigation and from threatening Xilinx with infringement litigation or charging them either verbally or in writing with infringement of any claims of the '415 patent.

## THIRD COUNT

### (Declaratory Judgment of Lack of Standing to Enforce the '865 Patent)

### (Against Defendants Intellectual Ventures and IV Management)

34. The allegations contained in paragraphs 1 through 33 are incorporated by reference as if fully set herein.

35. Defendants Intellectual Ventures and IV Management, through their representatives, have accused Xilinx of infringing the '865 patent and have pressured Xilinx into taking a license to the '865 patent. Despite Intellectual Ventures' and IV Management's accusations and attempts to enforce the '865 patent, Defendants now claim IV Management and Intellectual Ventures do not now have, nor have they ever had, any rights to assert or enforce the '865 patent.

36. Under all the circumstances in this dispute, Intellectual Ventures and IV Management have, at a minimum, created a substantial, immediate, and real controversy between the parties as to whether Intellectual Ventures and IV Management has standing to enforce the '865 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Intellectual Ventures and IV Management within the meaning of 28 U.S.C. § 2201.

37. A judicial declaration that Intellectual Ventures and IV Management lack standing to enforce the '865 patent is necessary and appropriate in order to resolve this controversy. Xilinx is also entitled to an injunction enjoining Intellectual Ventures and IV Management from initiating infringement litigation and from threatening Xilinx with infringement litigation or charging them either verbally or in writing with infringement of any claims of the '865 patent.

## FOURTH COUNT

**(Declaratory Judgment of Lack of Standing to Enforce the '001 Patent)**

**(Against Defendants Intellectual Ventures and IV Management)**

38. The allegations contained in paragraphs 1 through 37 are incorporated by reference as if fully set herein.

39. Defendants Intellectual Ventures and IV Management, through their representatives, have accused Xilinx of infringing the '001 patent and have pressured Xilinx into taking a license to the '001 patent. Despite Intellectual Ventures' and IV Management's accusations and attempts to enforce the '001 patent, Defendants now claim IV Management and Intellectual Ventures do not now have, nor have they ever had, any rights to assert or enforce the '001 patent.

40. Under all the circumstances in this dispute, Intellectual Ventures and IV Management have, at a minimum, created a substantial, immediate, and real controversy between the parties as to whether Intellectual Ventures and IV Management has standing to enforce the '001 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Intellectual Ventures and IV Management within the meaning of 28 U.S.C. § 2201.

41. A judicial declaration that Intellectual Ventures and IV Management lack standing to enforce the '001 patent is necessary and appropriate in order to resolve this controversy. Xilinx is also entitled to an injunction enjoining Intellectual Ventures and IV Management from initiating infringement litigation and from threatening Xilinx with infringement litigation or charging them either verbally or in writing with infringement of any claims of the '001 patent.

## FIFTH COUNT

**(Declaratory Judgment of Lack of Standing to Enforce the '301 Patent)**

**(Against Defendants Intellectual Ventures and IV Management)**

42. The allegations contained in paragraphs 1 through 41 are incorporated by reference as if fully set herein.

43. Defendants Intellectual Ventures and IV Management, through their representatives, have accused Xilinx of infringing the '301 patent and have pressured Xilinx into taking a license to the '301 patent. Despite Intellectual Ventures' and IV Management's accusations and attempts

to enforce the '301 patent, Defendants now claim IV Management and Intellectual Ventures do not now have, nor have they ever had, any rights to assert or enforce the '301 patent.

44.  Under all the circumstances in this dispute, Intellectual Ventures and IV Management have, at a minimum, created a substantial, immediate, and real controversy between the parties as to whether Intellectual Ventures and IV Management has standing to enforce the '301 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Intellectual Ventures and IV Management within the meaning of 28 U.S.C. § 2201.

45.  A judicial declaration that Intellectual Ventures and IV Management lack standing to enforce the '301 patent is necessary and appropriate in order to resolve this controversy. Xilinx is also entitled to an injunction enjoining Intellectual Ventures and IV Management from initiating infringement litigation and from threatening Xilinx with infringement litigation or charging them either verbally or in writing with infringement of any claims of the '301 patent.

## SIXTH COUNT

**(Declaratory Judgment of Non-Infringement of the '527 Patent)**

**(Against Defendants IV I and IV II)**

46.  The allegations contained in paragraphs 1 through 45 are incorporated by reference as if fully set herein.

47.  IV I and/or IV II claim to be the owner and assignee of all rights, title, and interest in and under the '527 patent.

48.  Defendants have accused Xilinx of infringing at least Claim 1 of the '527 patent through its manufacture, sale, use, and/or importation of certain integrated circuits that allegedly convert between serial and parallel data in response to a mode signal, including Xilinx's Virtex-5 GTX Transceiver, and have asserted that Xilinx must take a license to the '527 patent to lawfully continue the manufacture, sale, use, and/or importation of such integrated circuits.

49.  Xilinx has informed Defendants that Xilinx contends it has the right to engage in the manufacture, sale, use, and/or importation of these integrated circuits without a license to the '527 patent.

50.  Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the non-infringement of the '527 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

51.  Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claim of the '527 patent, either literally or under the doctrine of equivalents because none of its integrated circuits, including Xilinx's Virtex-5 GTX Transceiver, practice Claim 1 or any valid claim of the '527 patent.

52.  A judicial declaration of non-infringement of the '527 patent is necessary and appropriate in order to resolve this controversy.

## SEVENTH COUNT

### (Declaratory Judgment of Invalidity of the '527 Patent)
### (Against Defendants IV I and IV II)

53.  The allegations contained in paragraphs 1 through 52 are incorporated by reference as if fully set herein.

54.  Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the invalidity of the '527 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

55.  Upon information and belief, the '527 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

56.  At a minimum, at least Claims 1-5, 8, 15, 17-22, 27, 29, 32, and 33 of the '527 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '527 patent, including but not limited to U.S. Patent Nos. 5,371,736; 4,823,312; and 5,982,309. Had the patent examiner known or been made aware of these prior art references, the claims would not have been allowed and the '527 patent would not have issued.

57. The USPTO has already determined that these references raise a substantial new question of patentability of the '527 patent.

58. A judicial declaration of invalidity of the '527 patent is necessary and appropriate in order to resolve this controversy.

## EIGHTH COUNT

**(Declaratory Judgment of Non-Infringement of the '415 Patent)**

**(Against Defendants IV I and IV II)**

59. The allegations contained in paragraphs 1 through 57 are incorporated by reference as if fully set herein.

60. IV I and/or IV II claim to be the owner and assignee of all rights, title, and interest in and under the '415 patent.

61. Defendants have accused Xilinx of infringing at least Claim 1 of the '415 patent through its manufacture, sale, use, and/or importation of certain integrated circuits that may be used for device testing, including Xilinx's Spartan-3 Family, Virtex-II Series, and Virtex-4 Series field programmable gate arrays ("FPGA"), and have asserted that Xilinx must take a license to the '415 patent to lawfully continue the manufacture, sale, use, and/or importation of such integrated circuits.

62. Xilinx has informed Defendants that Xilinx has the right to engage in the manufacture, sale, use, and/or importation of such integrated circuits without a license to the '415 patent.

63. Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the non-infringement of the '415 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

64. Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claims of the '415 patent, either literally or under the doctrine of equivalents because none of its integrated circuits, including Xilinx's Spartan-3 Family, Virtex-II Series, and Virtex-4 Series FPGAs, practice Claim 1 or any valid claim of the '415 patent.

65. A judicial declaration of non-infringement of the '415 patent is necessary and appropriate in order to resolve this controversy.

## NINTH COUNT

### (Declaratory Judgment of Invalidity of the '415 Patent)

### (Against Defendants IV I and IV II)

66. The allegations contained in paragraphs 1 through 64 are incorporated by reference as if fully set herein.

67. Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the invalidity of the '415 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

68. Upon information and belief, the '415 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

69. At a minimum, Claims 1-24 of the '415 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '415 patent, including but not limited to Japanese Patent Application Nos. 01-170874 and 60-142282, and U.S. Patent No. 5,416,919. Had the patent examiner known or been made aware of these prior art references, the claims would not have been allowed and the '415 patent would not have issued.

70. The USPTO has already determined that these references raise a substantial new question of patentability of the '415 patent.

71. A judicial declaration of invalidity of the '415 patent is necessary and appropriate in order to resolve this controversy.

## TENTH COUNT

### (Declaratory Judgment of Non-Infringement of the '865 Patent)

### (Against Defendants IV I and IV II)

72. The allegations contained in paragraphs 1 through 69 are incorporated by reference as if fully set herein.

73. IV I and/or IV II claim to be the owner and assignee of all rights, title, and interest in and under the '865 patent.

74. Defendants have accused Xilinx of infringing one or more claims of the '865 patent through its manufacture, sale, use, and/or importation of certain integrated circuits that allegedly contain built-in test and debug functionality, including Xilinx's FPGA products, and have asserted that Xilinx must take a license to the '865 patent to lawfully continue the manufacture, sale, use, and/or importation of such integrated circuits.

75. Xilinx has informed Defendants that Xilinx has the right to engage in the manufacture, sale, use, and/or importation of these integrated circuits without a license to the '865 patent.

76. Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the non-infringement of the '865 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

77. Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claims of the '865 patent, either literally or under the doctrine of equivalents because none of its FPGA products practice any valid claim of the '865 patent.

78. A judicial declaration of non-infringement of the '865 patent is necessary and appropriate in order to resolve this controversy.

## ELEVENTH COUNT

### (Declaratory Judgment of Invalidity of the '865 Patent)

### (Against Defendants IV I and IV II)

79. The allegations contained in paragraphs 1 through 76 are incorporated by reference as if fully set herein.

80. Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the invalidity of the '865 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

81. Upon information and belief, the '865 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

82. At a minimum, Claims 1-22 of the '865 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '865 patent, including but not limited to Yervant Zorian, "Test Requirements for Embedded Core-based Systems and IEEE P1500," International Test Conference 1997 (ITC '97), November 1-6, 1997; and Manoj Franklin and Kewal K. Saluja, "Built-in Self-Testing of Random-Access Memories," Computer, October 1990. Had the patent examiner known or been made aware of these prior art references, the claims would not have been allowed and the '865 patent would not have issued.

83. The USPTO has already determined that these references raise a substantial new question of patentability of the '865 patent.

84. A judicial declaration of invalidity of the '865 patent is necessary and appropriate in order to resolve this controversy.

## TWELFTH COUNT

### (Declaratory Judgment of Non-Infringement of the '001 Patent)

### (Against Defendants IV I and IV II)

85. The allegations contained in paragraphs 1 through 81 are incorporated by reference

as if fully set herein.

86. IV I and/or IV II claim to be the owner and assignee of all rights, title, and interest in and under the '001 patent.

87. Defendants have accused Xilinx of infringing one or more claims of the '001 patent through its manufacture, sale, use, and/or importation of certain products that allegedly practice methods for generating a register transfer level (RTL) code for very large scale integrated circuit VLSI design, and have asserted that Xilinx must take a license to the '001 patent to lawfully continue the manufacture, sale, use, and/or importation of such products.

88. Xilinx has informed Defendants that Xilinx has the right to engage in the manufacture, sale, use, and/or importation of these products without a license to the '001 patent.

89. Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the non-infringement of the '001 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

90. Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claims of the '001 patent, either literally or under the doctrine of equivalents because none of Xilinx's design products practice any valid claim of the '001 patent.

91. A judicial declaration of non-infringement of the '001 patent is necessary and appropriate in order to resolve this controversy.

## THIRTEENTH COUNT

**(Declaratory Judgment of Invalidity of the '001 Patent)**

**(Against Defendants IV I and IV II)**

92. The allegations contained in paragraphs 1 through 88 are incorporated by reference as if fully set herein.

93. Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the invalidity of the '001 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

94. Upon information and belief, the '001 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

95. At a minimum, Claims 1-8 of the '001 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '001 patent, including but not limited to Ellen M. Sentovich, et al., SIS: A System for Sequential Circuit Synthesis, Memorandum No. UCB/ERL M92/41, UC Berkeley, May 4, 1992. Had the patent examiner known or been made aware of these prior art references, the claims would not have been allowed and the '001 patent would not have issued.

96. A judicial declaration of invalidity of the '001 patent is necessary and appropriate in order to resolve this controversy.

## FOURTEENTH COUNT

### (Declaratory Judgment of Non-Infringement of the '301 Patent)
### (Against Defendants IV I and IV II)

97. The allegations contained in paragraphs 1 through 93 are incorporated by reference as if fully set herein.

98. IV I and/or IV II claim to be the owner and assignee of all rights, title, and interest in and under the '301 patent.

99. Defendants have accused Xilinx of infringing at least Claim 4 of the '301 patent through its manufacture, sale, use, and/or importation of certain integrated circuits that allegedly contain built-in test and debug functionality, including Xilinx's FPGA products, and have asserted that Xilinx must take a license to the '301 patent to lawfully continue the manufacture, sale, use, and/or importation of such integrated circuits.

100. Xilinx has informed Defendants that Xilinx has the right to engage in the manufacture, sale, use, and/or importation of these integrated circuits without a license to the '301 patent.

101. Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the non-infringement of

the '301 patent. A valid and justiciable controversy has arisen and exists between Xilinx and Defendants within the meaning of 28 U.S.C. § 2201.

102. Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claims of the '301 patent, either literally or under the doctrine of equivalents because none of its integrated circuits, including Xilinx's FPGA products, practice Claim 4 or any valid claim of the '301 patent.

103. A judicial declaration of non-infringement of the '301 patent is necessary and appropriate in order to resolve this controversy.

## FIFTEENTH COUNT

### (Declaratory Judgment of Invalidity of the '301 Patent)

### (Against Defendants IV I and IV II)

104. The allegations contained in paragraphs 1 through 100 are incorporated by reference as if fully set herein.

105. Under all the circumstances in this dispute, Defendants have, at a minimum, created a substantial, immediate, and real controversy between the parties as to the invalidity of the '301 patent. A valid and justiciable controversy has arisen and exists between Xilinx and IV within the meaning of 28 U.S.C. § 2201.

106. Upon information and belief, the '301 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

107. At a minimum, at least Claims 1-6 of the '301 patent are invalid as anticipated and/or obvious over multiple prior art references that were not before the patent examiner during the prosecution of the '301 patent, including but not limited to Yervant Zorian, "Test Requirements for Embedded Core-based Systems and IEEE P1500," International Test Conference 1997 (ITC '97), November 1-6, 1997; and Manoj Franklin and Kewal K. Saluja, "Built-in Self-Testing of Random-Access Memories," Computer, October 1990. Had the patent examiner known or been made aware of these prior art references, the claims would not have been allowed and the '301 patent would not have issued.

108. The USPTO has already determined that these references raise a substantial new question of patentability of the '301 patent, and has issued an Office Action rejecting all claims of the '301 patent.

109. A judicial declaration of invalidity of the '301 patent is necessary and appropriate in order to resolve this controversy.

## PRAYER FOR RELIEF

WHEREFORE, Xilinx requests that the Court enter judgment in its favor and against Intellectual Ventures LLC, Intellectual Ventures Management LLC, Intellectual Ventures I LLC, and Intellectual Ventures II LLC, and requests the following relief:

(A) An adjudication that the '527, '415, '865, '001, and '301 patents (collectively, the "Asserted Patents") are not infringed by Xilinx's importation, use, offer for sale, and/or sale in the United States of the Accused Products;

(B) An adjudication that the Asserted Patents are invalid;

(C) An adjudication that Intellectual Ventures and IV Management do not have the right to assert or bring an action to enforce the '527, '415, '865, '001, and '301 patents;

(D) Issuance of an injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, or affiliates, from initiating infringement litigation and from threatening Xilinx with infringement litigation or charging them either verbally or in writing with infringement of any claims of the Asserted Patents.

(E) An adjudication in favor of Xilinx on each of Xilinx's claims;

(F) An adjudication that this is an exceptional case, and an award of Xilinx's costs and attorneys' fees by Defendant pursuant to 35 U.S.C. § 285 or otherwise; and

(G) Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Northern District of California Civil Local Rule 3-6(a), Xilinx respectfully requests a jury trial on all issues triable thereby.

Date: August 18, 2011

Respectfully submitted,

JONES DAY

By:      /s/ Behrooz Shariati
             Behrooz Shariati

Attorneys for Xilinx, Inc.

SVI-96671