Behrooz Shariati (State Bar No. 174436)
bshariati@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900

Attorneys for Plaintiff
XILINX, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

XILINX, INC.,

Plaintiff,

v.

INTELLECTUAL VENTURES I LLC, INTELLECTUAL VENTURES II LLC,

Defendants.

Case No. 3:11-cv-00671 SI

**XILINX, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

DATE: December 2, 2011
TIME: 9:00 A.M.
JUDGE: Honorable Susan Illston
PLACE: Courtroom 10, 19th Floor

**PUBLIC VERSION**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1

II. RELEVANT FACTS ........ 3

A. Defendants' Patent Licensing Business And Relationship To Xilinx ........ 3

B. The Communications Between IV and Xilinx Created a Real and Immediate Dispute Over Xilinx' Legal Right to Continue Its Activities Without a License ........ 3

III. ARGUMENT ........ 7

A. Under The Totality Of The Circumstances, There Exists An Actual Controversy Between Xilinx And IV As To All Of The Patents In Suit ........ 7

1. Standard for Declaratory Relief ........ 7

2. Under The Totality Of Circumstances, The Court Has Jurisdiction Over The '865 And '001 Patents ........ 9

3. There Is An Actual Controversy Between Xilinx And IV With Respect To The '301 Patent ........ 11

4. Because the Court Has Declaratory Judgment Jurisdiction Over Xilinx's Declaratory Judgment Claims for Non-Infringement of the '865, '001 and '301 Patents, it Also has Declaratory Judgment Jurisdiction Over Xilinx's Claims for Invalidity of the '865, '001 and '301 Patents ........ 13

5. Xilinx's DJ Claims are Sufficiently Plead to Survive Defendants' Motion to Dismiss ........ 13

6. In the Alternative, to the Extent the Court Grants Defendants' Motion, Xilinx Requests Leave to Amend the Complaint ........ 15

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
846 F.2d 731 (Fed. Cir. 1988) ........ 8, 9

*Bender v. Motorola*,
N.D. Cal. Case No. 4:09-cv-01245-SBA ........ 14, 15

*Hewlett-Packard Co. v. Acceleron LLC*,
587 F.3d 1358 (Fed. Cir. 2009) ........ passim

*Laub v. U.S. Dep't of Interior*,
342 F.3d 1080 (9th Cir. 2003) ........ 15

*McCarthy v. United States*,
850 F.2d 558 (9th Cir. 1988) ........ 7

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
312 U.S. 270 (1941) ........ 7

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ........ 1, 2, 7

*Microsoft Corp. v. Phoenix Solutions, Inc.*,
741 F. Supp. 2d 1156 (C.D. Cal. 2010) ........ 11

*Prasco, LLC v. Medicis Pharm. Corp.*,
537 F.3d 1329 (Fed. Cir. 2008) ........ 7, 8

*SanDisk Corp. v. STMicroelectronics, Inc.*,
480 F.3d 1372 (Fed. Cir. 2007) ........ 7, 11

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,
497 F.3d 1271 (Fed. Cir. 2007) ........ 8

*Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*,
482 F.3d 1330 (Fed. Cir. 2007) ........ 7

*Trend Micro Corp. v. Whitecell Software, Inc.*,
No. C-10-02248 WHA, 2011 WL 499951 (N.D. Cal. Feb. 8, 2011) ........ 8

## STATUTES

Declaratory Relief Act, 28 U.S.C. § 2201 ........ 7

## TABLE OF AUTHORITIES
**(continued)**

**Page**

**OTHER AUTHORITIES**

Fed. R. Civ. P., Rule 15 .......... 15

Fed. R. Evid., Rule 408 .......... 5, 6, 10

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

As part of its ongoing efforts to avoid addressing this case on the merits, Defendants Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively "IV") have now moved to dismiss Counts Five through Ten of Xilinx's Second Amended Complaint which relate to U.S. Patent Nos. 6,687,865 ("the '865 patent), 6,698,001 ("the '001 patent"), and 7,080,301 ("the '301 patent"). In its motion to dismiss, IV does not dispute that it has accused Xilinx of infringing the '865, '001 and '301 patents, demanding many millions of dollars in licensing royalties. Rather, IV argues that it did not accuse any "specific" Xilinx product of infringing these patents, and in the absence of an accusation of infringement directed at a specific product, Xilinx cannot state a claim for declaratory relief. IV's arguments are misguided. IV cannot hang patents over Xilinx's head with accusations of infringement (even if general) and remain immune from declaratory judgment jurisdiction.

Defendants make two arguments in support of their motion to dismiss: ***First***, Defendants argue that there is no actual controversy between Xilinx and IV regarding the '301 patent because IV never accused any specific Xilinx product of infringing the patent. IV claims that it accused only Xilinx products containing an ARM core processor, and because no such product exists or is planned, then no actual controversy exists. ***Second***, Defendants argue that there is no actual controversy between Xilinx and IV regarding the '865 and '001 patents because IV never provided claim charts for these patents and never identified specific Xilinx products that were allegedly infringing. Both arguments fail, and, accordingly, IV's Motion should be denied.

IV's first argument fails because it is factually wrong— at least one of Xilinx's 28 nm programmable logic devices and a variation of the 7-Series FPGA product contains an ARM core processor and Xilinx has publicly announced this fact on numerous occasions. [redacted]

IV's second argument fails because it fundamentally misconstrues the standard for declaratory relief jurisdiction. Under the Supreme Court's decision in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), and its progeny, the existence of an actual controversy

does not rise or fall on whether a patentee provides claim charts to the accused infringer or identifies specific infringing products. Rather, an actual controversy exists where there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* The test is an objective one and requires: (1) the patent holder to have asserted rights under a patent and (2) the alleged infringer to have engaged in, or taken meaningful steps to engage in, activity that could be accused of infringement. That test is met here:

 (1) IV has asserted rights under each of the patents-in-suit, as alleged (and undisputed) in Paragraphs 62 (the '865 patent), 77 (the '001 patent) and 92 (the '301 patent) of the Second Amended Complaint. IV's representatives asserted these patents against Xilinx and demanded many millions of dollars in royalties. They also made it clear that IV's plans for the FPGA industry include filing patent infringement suits against FPGA manufacturers, including Xilinx's major competitors.

 (2) Xilinx has engaged in activity that is potentially infringing with respect to each of the patents-in-suit, as alleged in Paragraphs 65 (the '865 patent), 80 (the '001 patent) and 95 (the '301 patent). Moreover, in compliance with this Court's Order of July 27, 2011, those paragraphs specifically identify the potentially infringing products. *See* SAC ¶¶ 65 (the "Virtex-4 Series"), 80 (the "ISE Design Suite"), and 95 ("Xilinx's 28 nm programmable logic products such as the 7 Series FPGAs").

The controversy between IV and Xilinx with respect to the '865, '001 and '301 patents is substantial, real and imminent, and IV's motion should be dismissed.

 Finally, as a fallback position, Defendants contend that all of Xilinx's claims for declaratory relief of non-infringement relating to the '865, '001, and '301 patents should be dismissed for failure to state a claim because Xilinx failed to identify specific products that have been accused by IV of infringing, or for which Xilinx seeks a declaration of non-infringement. This argument ignores the facts and misapplies the law. Because Xilinx's Second Amended Complaint does in fact identify specific products or product families for which it seeks a declaration of non-infringement, Xilinx has sufficiently plead its declaratory judgment claims and

IV's Motion should be dismissed.

## II. RELEVANT FACTS

Xilinx has previously introduced the parties and described the long history between them, and so will not repeat these facts here. (*See* ECF No. 56 at 2-14; ECF No. 71 at 2-6 (both filed under seal).) However, the following facts are relevant to this Motion and necessary to correct Defendants' misleading version of the events leading to the filing of this action.

### A. Defendants' Patent Licensing Business And Relationship To Xilinx

Non-parties Intellectual Ventures and Intellectual Ventures Management (collectively "IV Management") make up what has been called one of the world's largest patent holding companies. They claim to own rights to more than 30,000 patents and patent applications in their portfolio, which they market to investors through their private IP funds (the "Funds"). (ECF No. 65-5.) [redacted]

[redacted]

[redacted]

### B. The Communications Between IV and Xilinx Created a Real and Immediate Dispute Over Xilinx' Legal Right to Continue Its Activities Without a License

[redacted]

[redacted]

## III. ARGUMENT

### A. Under The Totality Of The Circumstances, There Exists An Actual Controversy Between Xilinx And IV As To All Of The Patents In Suit

#### 1. Standard for Declaratory Relief

Subject matter jurisdiction under the Declaratory Relief Act, 28 U.S.C. § 2201(a), requires a showing of an actual case or controversy between the declaratory relief plaintiff and defendant. *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1336 (Fed. Cir. 2007). Proof of an actual case or controversy is not limited to the four corners of the pleadings, and the Court may consider any admissible evidence to determine the existence of jurisdiction. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

The Supreme Court has articulated a totality of the circumstances standard for declaratory judgment jurisdiction: "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Likewise, the Federal Circuit explained that declaratory judgment jurisdiction in patent cases requires a totality of the circumstances analysis, and has stated that a "patentee can cause such an injury [sufficient to create a justiciable case or controversy] in a variety of ways, for example, by creating a reasonable apprehension of an infringement suit, . . . demanding the right to royalty payments, . . . creating a barrier to the regulatory approval of a product that is necessary for marketing," or by prior litigious conduct. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339, 1341 (Fed. Cir. 2008). Applying *MedImmune*, the Federal Circuit has held that "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise . . . ." *SanDisk Corp.*

*v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).

An actual controversy may exist even in the absence of a direct or explicit threat because, "a declaratory judgment plaintiff does not need to establish a reasonable apprehension of a lawsuit in order to establish that there is an actual controversy between the parties." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007). The Federal Circuit has held that a justiciable controversy exists where there is a "real and *immediate* injury or threat of future injury that is *caused by the defendants* . . . ." *Prasco*, 537 F. 3d. at 1339. Jurisdiction exists where the plaintiff can show "'some affirmative act by the patentee' that forms the basis for an actual controversy between the parties." *Trend Micro Corp. v. Whitecell Software, Inc.*, No. C-10-02248 WHA, 2011 WL 499951, at *3 (N.D. Cal. Feb. 8, 2011) (citing *Prasco*, at 1338-39).

In *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed. Cir. 1988), the Federal Circuit went further, stating that an actual controversy may be found where "a patentee first learns of plaintiff's conduct upon receipt of the complaint," and even in circumstances which "include *no* communication by defendant to plaintiff." *Id.* at 738. In *Arrowhead*, the Federal Circuit found an actual controversy where the patentee threatened the customers of the declaratory relief plaintiff. *Id*. at 736-37.

In *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358 (Fed. Cir. 2009), the Federal Circuit went still further, stating:

> Acceleron repeatedly emphasizes that "at the time HP filed its complaint, Acceleron could not have asserted its rights in the '021 patent against HP because it had not even determined if it had a basis to assert the patent against HP." However, it is irrelevant whether Acceleron had conducted an adequate investigation or whether it subjectively believed HP was infringing. ***"The test [for declaratory judgment jurisdiction in patent cases], however stated, is objective. Indeed, it is the objective words and actions of the patentee that are controlling."*** Thus, ***conduct that can be reasonably inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction.***

*Id*. at 1363-64 (emphasis added) (citations omitted) (reversing the district court's dismissal for lack of subject matter jurisdiction based on its finding that there was "declaratory judgment jurisdiction arising from a 'definite and concrete' dispute between . . . parties having adverse legal interests"). The Federal Circuit has even held that a patentee's litigation history can demonstrate an intent to enforce a patent, creating declaratory judgment jurisdiction. *See*

*Arrowhead*, 846 F.2d at 737-38.

**2. Under The Totality Of Circumstances, The Court Has Jurisdiction Over The ’865 And ’001 Patents**

There can be no doubt that the 2010-2011 communications between IV and Xilinx meet the standard for declaratory judgment jurisdiction. Contrary to IV’s assertion, there is no rule requiring a patentee to name specific accused products or provide claim charts in order to establish declaratory judgment jurisdiction. Indeed, the opposite is true. In *Hewlett-Packard* for example, the Federal Circuit found that declaratory judgment jurisdiction existed where a non-competitor patent holding company sent two letters to Hewlett-Packard (“HP”) in which the holding company identified certain patents that it owned, referenced a category of products (blade servers) sold by plaintiff, and imposed deadlines by which HP needed to respond. *Hewlett-Packard*, 587 F.3d at 1362-63. In that case, the court found jurisdiction when no claim charts were exchanged, and no specific products were identified. Here, IV’s actions were far more definitive in creating a case or controversy. Indeed, as alleged in the complaint (SAC ¶¶ 62 & 77), IV affirmatively accused Xilinx of infringing the ’865 and ’001 patents. Those allegations remain undisputed.

Unable to dispute those allegations, and in the face of such contrary controlling law, IV attempts to argue that because it never actually accused any “specific” Xilinx product of infringing the ’865 and ’001 patents,[1] it has taken no affirmative steps to enforce its patents. (*See, e.g.*, Mot. at 1, 9-11.) IV attempts to brush aside its actions, claiming that

IV’s arguments are squarely contradicted by a number of undisputed facts in the record,

It is

[1] IV offers only attorney argument here, and provides no evidence to support its argument that IV did not accuse any specific Xilinx product of infringing the ’865 and ’001 patents. (Mot. at 9-11.)

undisputed that IV approached Xilinx in order to get Xilinx to pay additional license fees for patents IV contended Xilinx infringed. [REDACTED] *See Hewlett-Packard*, 587 F.3d at 1363 (finding DJ jurisdiction over patents identified as "relevant" to plaintiff's products by a "non-competitor patent holding company"). [REDACTED] It is

only now, in an effort to avoid the jurisdiction of this Court, that IV claims that there was any distinction between groups of patents it asserted against Xilinx.

These facts are sufficient to establish a real, immediate, and substantial controversy regarding all the patents in suit. *SanDisk*, 480 F.3d at 1381. *See also, Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156, 1162 (C.D. Cal. 2010) (finding declaratory judgment jurisdiction where defendant sent several threatening letters to Plaintiff's customer identifying fifteen patents relevant to the accused system, but providing only nine claim charts; and holding that "evidence of conduct that shows an intent to enforce all fifteen patents . . . creates declaratory judgment jurisdiction over all fifteen patents"); *Hewlett-Packard*, 587 F.3d at 1363 (finding DJ jurisdiction over patents identified by patent holding company as "relevant" to plaintiff's products).

Xilinx was not merely "notified of the existence" of the '865 and '001 patents, as Defendants claim. (Mot. at 10.) Rather IV representatives repeatedly asserted, both expressly and impliedly, that Xilinx infringed all sixteen of the Key Patents, including the '865 and '001 patents, and demanded that Xilinx take a license to all of those patents. [REDACTED] While the Delaware lawsuit involved only four of the sixteen Key Patents, IV's actions were "evidence of conduct that shows an intent to enforce all [sixteen] patents." *Microsoft*, 741 F. Supp. 2d at 1162. Because IV has asserted "rights under a patent based on certain identified ongoing or planned activity of another party," the standard for declaratory judgment jurisdiction has been met and IV's Motion should be denied. *See SanDisk*, 480 F.3d at 1381.

### 3. There Is An Actual Controversy Between Xilinx And IV With Respect To The '301 Patent

IV also argues that no jurisdiction exists over Xilinx's declaratory judgment claims regarding the '301 patent because the claim chart IV gave Xilinx for the '301 patent accuses only circuits containing an ARM dual-core Cortex A9 MPCore Processor, and because the products for which Xilinx seeks a declaration of non-infringement—the 28 nm programmable logic

products and 7-Series FPGA products—do not contain an ARM core processor.[2] IV is simply wrong. At least one of Xilinx's 28 nm programmable logic products, including a variation of the 7-Series FPGA products does indeed contain an ARM core processor processor as alleged in Paragraph 95 of the Second Amended Complaint. As the complete grounds upon which IV's motion is based with respect to the '301 patent is factually incorrect, IV's motion necessarily fails and should be denied.

IV also falsely argues that it "did not accuse any current (or even future) Xilinx product of infringing the '301 patent, because based on [IV's] understanding at the time, none existed." (Mot. at 7.) [REDACTED]

Liu Decl. Ex. 17 (WP369, v. 1.0). [REDACTED]

In order to accept IV's position one must believe the assertion that IV spent the time and resources to create an "Evidence of Use" chart comparing the '301 patent against the ARM core processor (using Xilinx's technical manuals) and presented this material to Xilinx along with similar material for other patents and products even though IV believed that Xilinx did not offer and was not developing a product incorporating an ARM Cortex A9 processor.[3] Nevertheless,

---

[2] In a footnote, IV criticizes Xilinx for failing to provide IV with "an identification of any past or current Xilinx product that allegedly incorporates ARM Cortex A9 technology." (Mot. at 7 n.3.) However, a simple search of Xilinx's homepage for the word "ARM" or "ARM" in conjunction with "7 Series" would have provided IV with the information it requested, as it results in numerous links to 28 nm programmable logic and variations of the 7-Series FPGA products that do incorporate the ARM Cortex A9 technology. Henry L. Welch Declaration Ex. A ("ARM 7 Series" Search Results).

[3] [REDACTED] Ex. 18 (April 27, 2010 News Release).

even if IV was deliberately leveling a false accusation at Xilinx, as it now claims,[4] under Federal Circuit law, it is "irrelevant whether [IV] had conducted an adequate investigation or whether it subjectively believed [Xilinx] was infringing. . . . Indeed, it is the objective words and actions of the patentee that are controlling." *See Hewlett-Packard*, 587 F.3 at 1363 (citation omitted).

#### 4. Because the Court Has Declaratory Judgment Jurisdiction Over Xilinx's Declaratory Judgment Claims for Non-Infringement of the '865, '001 and '301 Patents, it Also has Declaratory Judgment Jurisdiction Over Xilinx's Claims for Invalidity of the '865, '001 and '301 Patents

IV does not challenge the sufficiency of the allegations in the Second Amended Complaint regarding invalidity. Instead, the single argument advanced by IV in support of its motion to dismiss Xilinx's declaratory judgment claims for invalidity, is that because the court lacks declaratory judgment jurisdiction over Xilinx's infringement claims it also lacks declaratory judgment jurisdiction over Xilinx's invalidity claims. (Mot. at 11.) As established above, the Court has declaratory judgment jurisdiction over Xilinx's infringement claims. Therefore, IV's motion as to Xilinx's invalidity claims should likewise be denied.

#### 5. Xilinx's DJ Claims are Sufficiently Plead to Survive Defendants' Motion to Dismiss

As a final catch-all argument, IV once again argues that Xilinx's claims for declaratory relief of non-infringement should be dismissed because Xilinx "fail[s] to specify the products or conduct that are allegedly non-infringing the '527, '415, '865, '001, and '301 patents, [and therefore] Xilinx fails to state a plausible claim that is definite and concrete for declaratory relief of non-infringement . . . ." (Mot. at 12.) This argument is specious for the reasons set forth above and because Xilinx's Second Amended Complaint clearly identifies specific products or product families for each of the patents on which Xilinx seeks a declaration of non-infringement.

Specifically, Xilinx's Second Amended Complaint seeks "[a]n adjudication that the '527, '415, '865, '001, and '301 patents (collectively, the "Asserted Patents") are not infringed by

[4] It is difficult to understand why IV would now contend they were making a false claim when they suggested that Xilinx contact ARM regarding IV's claims of infringement. One rationale for such actions would be an effort to perpetuate a fraud on Xilinx. A less sinister explanation is the more obvious one – that IV believed Xilinx had a product containing an ARM core processor that infringed the '301 patent.

Xilinx's importation, use, offer for sale, and/or sale in the United States of the Accused Products, including ***the Spartan-3 Family***, ***Virtex-II Series,*** and ***Virtex-4 Series FPGAs***, the ***Virtex-5 GTX Transceiver***, the ***28 nm programmable logic products containing an ARM dual-core Cortex™A9 MPCore Processor such as the 7 Series FPGAs, and the ISE® Design Suite***." (SAC at 15-16 (ECF No. 100).) For the '865, '001, and '301 patents at issue in this Motion,[5] Xilinx clearly identifies a product or product family for which Xilinx seeks a declaration of non-infringement:

- Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claims of the '865 patent, either literally or under the doctrine of equivalents because none of its FPGA products, including at least the ***Virtex-4 Series***, practice any valid claim of the '865 patent. (SAC ¶ 65 (ECF No. 100) (emphasis added).)

- Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claims of the '001 patent, either literally or under the doctrine of equivalents because none of Xilinx's design products, including at least ***ISE® Design Suite***, practice any valid claim of the '001 patent. (SAC ¶ 80 (ECF No. 100) (emphasis added).)

- Upon information and belief, Xilinx has not directly or indirectly infringed any valid and enforceable claims of the '301 patent, either literally or under the doctrine of equivalents because none of its integrated circuits allegedly containing an **ARM dual-core Cortex™A9 MPCore Processor, including at least Xilinx's 28 nm programmable logic products such as the 7 Series FPGAs**, practice Claim 4 or any valid claim of the '301 patent. (SAC ¶ 95 (ECF No. 100) (emphasis added).)

The claims found insufficient by the Court in *Bender v. Motorola* bear no resemblance to those asserted by Xilinx in its Second Amended Complaint. In *Bender* (which did not involve claims for declaratory judgment), the Plaintiff failed to identify ***any*** specific products or product families:

> Motorola has performed acts and performs acts within this judicial district and elsewhere that infringe, and induce others to infringe, one or

[5] IV's notice of motion and request for relief is limited to those claims relating to the '865, '001 and '301 patents. (Mot. at 11.) Xilinx's Opposition therefore, addresses only those claims for which IV seeks dismissal.

> more of the claims of the '188 Patent . . . by making, using, offering for sale, and/or selling products that consist of, comprise, and/or contain at least one circuit, silicon or otherwise, which contains and/or utilizes at least one buffered transconductance amplifier . . . and/or by practicing related methods embodying inventions claimed therein, which ***such products include, without limitation, cell phones, computers, network drivers, high definition television sets, ultrasound machines, MRI machines, lab equipment, arbitrary waveform generators, audio amplifiers, video amplifiers, hard disc drives, ADC/DAC converters, DVD-RW players, DSL modems, CCD cameras, satellite communication technology, and other products where high performance, high speed analog circuits are used, and/or components thereof***.

*Bender v. Motorola*, N.D. Cal. Case No. 4:09-cv-01245-SBA, First Amended Complaint, ECF No. 4 at 2-3. Thus, the court held "Plaintiff's generic descriptions of a litany of electronic products are far too conclusory to pass muster under Rule 8, *Twombly* or *Iqbal*." *Bender*, 2010 WL 72739 at *3. By contrast, the allegations of the complaint at issue here point to specific products and product families.

### 6. In the Alternative, to the Extent the Court Grants Defendants' Motion, Xilinx Requests Leave to Amend the Complaint

In the event the Court is inclined to grant Defendant's Motion to Dismiss, Xilinx respectfully requests leave to amend its Second Amended Complaint to cure any deficiency perceived by the Court. Under the Federal Rules, such leave should be granted "freely." Fed. R. Civ. P. 15(a)(2). Moreover, if the Court finds that subject matter jurisdiction over Xilinx's claims is not supported by the record, Xilinx respectfully requests leave of the Court to take focused discovery from Defendants to further demonstrate the existence of subject matter jurisdiction. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (recognizing that "[a] district court is vested with broad discretion to permit or deny [jurisdictional] discovery," and holding that "discovery should be granted when, as here, the jurisdictional facts are contested or more facts are needed").

## IV. CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion to Dismiss Xilinx's Second Amended Complaint. In the alternative, if the Court grants Defendants' Motion,

it should also grant Xilinx leave to amend its Complaint and/or grant Xilinx leave to take jurisdictional discovery.

Dated: November 3, 2011

Respectfully submitted,

JONES DAY

By: _/S/ Behrooz Shariati____________
Behrooz Shariati

Attorneys for Xilinx, Inc.

SVI-98974

CASE NO. 3:11-cv-00671 SI - 16 - XILINX'S OPP'N TO DEFS. MOT. TO DISMISS XILINX'S SAC