IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XILINX, INC.,<br><br>    Plaintiff,<br>  v.<br><br>INTELLECTUAL VENTURES I LLC,<br>INTELLECTUAL VENTURES II LLC,<br><br>    Defendants.<br>_____/ | No. C 11-0671 SI<br><br>**ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT (11-0671); ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT (11-4407)** |
| XILINX, INC.,<br><br>    Plaintiff,<br>  v.<br><br>INTELLECTUAL VENTURES, LLC,<br>INTELLECTUAL VENTURES<br>MANAGEMENT, LLC,<br>et al.,<br><br>    Defendants.<br>_____/ | No. C 11-4407 SI |

Currently before the Court in Case No. 11-0671 is the motion by defendants Intellectual Ventures I, LLC ("IV-I") and Intellectual Ventures II, LLC ("IV-II") to dismiss five claims from plaintiff Xilinx's Second Amended Complaint. Also before the Court in a related case is the motion by defendants Intellectual Ventures, LLC ("IV"), Intellectual Ventures Management, LLC ("IV Management"), and others to dismiss Xilinx's First Amended Complaint in Case No. 11-4407. Pursuant to Civil Local Rule 7-1(b), the Court finds these matters appropriate for resolution without oral argument and hereby VACATES the January 27, 2012 hearing. Having considered the papers submitted, and for good cause shown, the Court DENIES the motion to dismiss in 11-0671 and GRANTS in part and DENIES in part the motion in 11-4407.

**BACKGROUND**

**1. Factual background**

These cases arise from a common set of facts and allegations. Plaintiff Xilinx is in the business of "designing, developing and marketing complete programmable logic solutions, including advanced integrated circuits, software design tools, predefined system functions delivered as intellectual property cores, design services, customer training, field engineering and customer support." Second Amended Complaint 11-0671 (SAC) [Docket No. 100], ¶ 2; First Amended Complaint 11-4407 (FAC), ¶ 13. The Intellectual Ventures defendants (*i.e.*, IV, IV-I, IV-II, and IV Management), are alleged to be patent holding and management companies which own and manage the rights to more than 30,000 patents and patent applications. SAC, ¶¶ 15-16.[1] Xilinx alleges that in 2005 and 2008 it became a limited partner in two funds – Intellectual Ventures Fund I and Intellectual Ventures Fund II – held and managed by some of the defendants. *Id.*, ¶ 20-21. Xilinx alleges that in summer 2010 the parties entered negotiations over whether Xilinx would make additional investments in IV Funds to take licenses to certain patent portfolios. *Id.*, ¶ 24. Plaintiff asserts that IV Management refused to consider granting Xilinx licenses to individual patents and Xilinx declined to pay for licenses to the portfolios. *Id.*, ¶ 24.

In late November 2010, Joseph Chernesky (a Vice-President and General Manager of IV and IV Management's Hardware Intellectual Property group) emailed Xilinx's General Counsel asking Xilinx to reconsider its decision not to elect into additional portfolios and suggested some urgency to renewing the parties' discussions in light of IV Management's intention to move forward "with our plans regarding the FPGA industry." Declaration of Justin Liu, Ex. 1.[2] In response, Xilinx's general

---

[1] The other defendants in Case No. 11-4407 are alleged assignees of patents in suit: Latrosse Technologies, LLC (patent '165), Roldan Block NY, LLC (patent '736), Intellectual Ventures Funding, LLC (patent '061), TR Technologies Foundation (patent '331), LLC, Taichi Holdings, LLC (patent '350), Noregin Assets N.V., LLC (patent '497), and Detelle Relay KG, LLC (patent '251). Plaintiff alleges that these entities are holding companies and that their activities are directed by IV and/or IV Management. FAC, ¶ 24.

[2] As the Court is faced with a motion challenging its jurisdiction, the Court is allowed to review material outside of the complaints at issue. *McCarthy v. United States*, 850 F.2d 558 (9th Cir. 1988). The Court recognizes that the parties have filed much of the information regarding their business negotiations under seal. However, the Court does not find that the parties have met the good cause standard required for continued sealing to the extent the Court relies on and cites that information in this publicly filed order.

2

counsel requested IV Management to send Xilinx a list of the portfolios that IV/IV Management believed Xilinx should reconsider. *Id.*, Ex. 2. Mr. Chernesky responded on December 7, 2010 with a list twelve "deals" (portfolios) containing sixteen "key" patents. *Id.*, Ex. 4. That email was followed up the next day by Chernesky informing Xilinx's GC that IV/IV Management had "taken action to enforce our invention rights" by filing suits, including a suit against three of Xilinx's competitors in the FPGA market. *Id.*, Ex. 5. Mr. Chernesky indicated that IV/IV Management took that action only after "business negotiations broke down" and to protect their obligations to investors, inventors and licensees. *Id.* The parties continued their discussions regarding the lawsuits and the relationship between Xilinx and IV, as well as the list of the sixteen patents from twelve patent portfolios and Xilinx's "election process going forward." *Id.*, Ex. 7. As part of those negotiations, Xilinx requested that IV/IV Management provide exemplary patent information and claim charts mapping current and future Xilinx products against the sixteen patents being discussed. *See id.*, Ex. 8. In early January, IV/IV Management delivered claim charts for nine of the sixteen "key patents," representing 8 out of the 12 portfolios identified by IV. Lui Decl., ¶ 13.

As the parties' discussions continued, Xilinx asserts that IV Management representatives demanded that Xilinx take a license to all 12 of the patent portfolios (which contained the sixteen "key" patents among others), and set a deadline in late February for conclusion of the parties' negotiations. *Id.*, ¶ 16. Xilinx alleges that IV Management demanded "tens of millions of dollars" for the licenses and an additional $10 million for future IV acquisitions. *Id.* Xilinx claims that it did not receive any additional claim charts mapping the remaining patents against Xilinx's products because Xilinx refused to sign a new non-disclosure and FRE 408 agreement and IV Management would not produce the remaining charts without it. *Id.*, ¶ 19. IV/IV Management's representative acknowledges that IV produced claim charts for only a subset of the patents at issue, but offers no explanation as to why. *See* Declaration of Joseph F. Chernesky [Doc. No. 78], ¶ 4. IV/IV Management's representative also asserts that at no point did IV refuse to allow Xilinx to invest into a "subset of the portfolios identified during the 'true-up' process," but does not dispute Xilinx's point that IV refused to allow Xilinx to take individual licenses to any of the "key" patents. *Id.*

The parties' negotiations broke down when Xilinx filed the 11-0671 suit on February 14, 2010

3

and the next day defendants filed an amended complaint in an action pending in Delaware action adding Xilinx as a defendant. Liu Decl., Ex. 16.

### 2. Procedural background

On December 8, 2010, some of the IV defendants in these actions filed suit against three of Xilinx's competitors in the District Court of Delaware (Delaware action). That action contends that Xilinx's competitors are infringing four of IV's patents, which patents are among the sixteen "key" patents identified by the IV defendants in the negotiations with Xilinx. Following the filing of the Delaware action and the breakdown of the parties' negotiations, Xilinx filed Case No. 11-0671 SI in this Court on February 14, 2011. That lawsuit originally named numerous defendants, including IV, IV Management, IV-I and IV-II. The suit sought a declaratory judgment of non-infringement and invalidity as to each of the sixteen patents identified by the IV defendants as "key." On February 15, 2011, the IV entities litigating the Delaware action filed an amended complaint adding Xilinx as a defendant. Subsequently, defendants moved to dismiss the complaint pending here (No. 11-0671 SI ), or in the alternative, to transfer the claims regarding the four "overlapping" patents to the Court in Delaware. Plaintiff responded by moving the Court to enjoin defendants from prosecuting the claims against Xilinx in the Delaware action.

In ruling on the motions, this Court held that plaintiff's declaratory relief claims regarding the four patents at issue in the Delaware action should be transferred to the Delaware court. July 27, 2011 Order [Docket No. 86] at 6. This Court also dismissed Xilinx's claims with respect to seven patents (patents '251, '736, '165, '331, '350, '497, and '061) because those patents were not owned by or assigned to any parties to the suit. *Id.*, at 5. With respect to the remaining five patents (patents '527, '415, '865, '001 and '301), the Court granted defendants' motion to dismiss for failure to plead the invalidity assertions with specificity and failure to identify the products or conduct alleged not to infringe. *Id.*, at 9-10. Plaintiff was given leave to amend. Finally, the Court dismissed defendants Invention Investment Fund I LLP, Invention Investment Fund II LLC, Intellectual Ventures LLC, and Intellectual Ventures Management LLC from the 11-0671 action, because they were not shown to have any ownership interest in the five remaining patents in suit. *Id.*, at 10. Plaintiff filed its Amended

Complaint against the two remaining defendants (IV-I and IV-II) on August 18, 2011, and by stipulation, filed the operative Second Amended Complaint on September 30, 2011.

On September 2, 2011, Xilinx filed Case No. C 11-4407, and filed a First Amended Complaint on October 17, 2011. In that case, Xilinx re-raises it claims for a declaratory judgment of invalidity against the seven patents dismissed from the 11-0671 action (patent nos. '251, '736, '165, '331, '350, '497, and '061), and adds as defendants the entities who are on record with the USPTO as being the assignees for each of those seven patents.

**DISCUSSION**

**1.   Motion to Dismiss SAC in 11-0671**

Defendants IV-I and IV-II (collectively "IV" for purposes of this motion) move to dismiss claims five through ten of the SAC. Those claims involve three patents: the '865 patent, the '001patent, and the '301 patent. IV argues that no real, immediate controversy exists between the parties regarding these patents sufficient to sustain declaratory judgment jurisdiction.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The dispute, however, must be "real and substantial" and "definite and concrete, touching the legal relations of parties having adverse legal interests[.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). A district court must ask "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (citations omitted). To determine whether jurisdiction exists, the party invoking jurisdiction must point to "some affirmative act by the patentee" that forms the basis for an actual controversy between the parties. *Prasco, LLC v. Medicis Pharm. Corp*., 537 F.3d 1329, 1338-39 (Fed. Cir. 2008). The "affirmative act" necessary to sustain declaratory judgment jurisdiction can arise in "a variety of ways, for example, by creating a reasonable apprehension of an infringement suit . . . demanding the right to royalty payments, . . . or creating a barrier to the regulatory approval of a product that is necessary for marketing." *Id.,* 537 F.3d

at 1339; *but see Trend Micro Corp. v. WhiteCell Software, Inc.*, 2011 U.S. Dist. LEXIS 12248 (N.D. Cal. Feb. 8, 2011) (finding lack of declaratory judgment jurisdiction where defendant patent holder "has not made any claim that [plaintiff] infringes" its patent, has not "threatened or otherwise communicated" with plaintiff regarding infringement of that patent, and has "not even performed an infringement analysis to determine whether any" of plaintiff's products may infringe the patent).

### A.     '865 and '001 Patents

Defendants argue that there is no definite and immediate controversy between the parties with respect to Xilinx's non-infringement claims under the '865 and '001 patents because IV Management did not accuse any specific Xilinx product of infringing these two patents and did not, as part of the parties' business negotiations in late 2010 and early 2011, provide claim charts for the '865 or '001 patents (while it did provide claim charts for other patents at issue). *See* Motion to Dismiss (MTD) SAC at 9-10.

The Court finds that, on the record before it, Xilinx has demonstrated a real and definite dispute between the parties sufficient to confer declaratory judgment jurisdiction over Xilinx's non-infringement claims as to the '865 and '001 patents. The Court notes that it was IV's representative who identified these two patents among the sixteen "key" patents IV believed should be "of interest" to Xilinx. *See, e.g.*, Liu Decl, Ex. 4. IV made this identification in the context of business negotiations and in an attempt to convince Xilinx that it should "true-up" and invest in the twelve portfolios containing the sixteen "key" patents. *Id.*, Ex. 7. IV, however, refused to allow Xilinx to take licenses to any of the individual "key" patents, insisting that Xilinx instead "elect" into some or all of the twelve portfolios. While IV makes much of the fact that it did not threaten Xilinx with litigation, but instead was simply engaging in "business negotiations," the Court notes that IV identified the sixteen key patents for Xilinx shortly before filing suit against three of Xilinx's competitors in order to "enforce" IV's intellectual property rights but only "after our efforts to engage these companies in business discussions broke down." Liu Decl., Ex 5. This conduct all indicates that a real, immediate case or controversy exists. *See, e.g., Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009) (finding correspondence exchanged between a patent holding company and a manufacturer, where

6

correspondence referenced patent held by company as well as a product line of manufacturer's and imposed a deadline for a response, was sufficient to create declaratory judgment jurisdiction)

Though IV now attempts to argue that there is no "real" and "immediate" controversy over the '865 and '001 patents, based on the record before the Court it appears that those patents were a necessary part of IV's attempt to induce Xilinx to invest in broad portfolios of patents, by holding out Xilinx's alleged need to secure licenses to the sixteen "key" patents. Although IV did not provide Xilinx with claim charts for the '865 and '001 patents, that could be because either Xilinx refused to sign a new NDA/408 agreement (as Xilinx asserts, Liu Decl., ¶ 19) or because IV did not believe – despite its attempts to convince Xilinx otherwise – that Xilinx should be interested in the '865 and '001 patents in light of its current and future products. In support of its motion, IV's declarant explains that despite Xilinx's request for claim charts for each of the sixteen "key" patents, IV "prepared and delivered" to Xilinx charts for only a subset of the patents. IV does not explain why it did this, or attempt to rebut Xilinx's argument. *See, e.g.,* Chernesky Decl., ¶ 4. Similarly, while IV's declarant asserts that the true-up process did not involve allegations of "infringement" with respect to the '865 and '001 patents, IV does not introduce evidence that it backed away from its belief that the '865 and '001 patents were "key" and should be of interest to Xilinx given Xilinx's current or future products, or that IV stopped pushing Xilinx to invest in the specific portfolios containing these two "key" patents. *Id.,* ¶ 5. These factors, and IV's failure to adequately rebut plaintiff's evidence and arguments, also support a finding of a real, immediate case or controversy. *Cf. Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F. Supp. 2d 1156, 1162 (C.D. Cal. 2010) (finding declaratory judgment jurisdiction where correspondence between parties identified fifteen patents and sought to negotiate licenses over fifteen patents, even though defendant subsequently provided claim charts for only nine patents).[3]

In sum, Xilinx has pointed to sufficient evidence to show that IV's own actions have created

---

[3] The Court has reviewed the case cited in defendants' statement of recent decision, *Streck, Inc. v. Research & Diagnostic Sys.*, 2012 U.S. App. LEXIS 458 (Fed. Cir. Jan. 10, 2012), but finds that case inapposite. In *Streck*, the issue before the Court was whether the district court had declaratory relief jurisdiction over defendants' cross-claims for invalidity with respect to *all* claims for *all* of the patents in dispute, where the plaintiff was asserting only some claims against defendants' products. The Federal Circuit affirmed the district court's holding that jurisdiction existed against only the asserted claims, and reiterated that the standard for declaratory relief jurisdiction, under *MedImmune*, is that a party seeking declaratory judgment has the burden of establishing jurisdiction under the totality of circumstances test.

7

1 a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy
2 and reality to warrant the exercise of declaratory judgment jurisdiction over Xilinx' invalidity claims
3 with respect to the '865 and '001 patents.

### B. '301 Patent

IV argues that there is no justiciable controversy as to non-infringement between the parties as to the '301 patent because Xilinx fails to identify a current or future product with "sufficient specificity" that contains or will contain an "ARM dual-core Cortex A9 MPC Core processor;" a component which allegedly infringes Claim 4 of the '301 patent. MTD SAC at 6-8. In opposition, Xilinx states that at "least one of its 28 nm programmable logic products, including a variation of the 7-Series FPGA does indeed contain an ARM core processor," as alleged in paragraph 95 of the SAC. Xilinx Oppo. to MTD SAC at 12. Xilinx also points out that in IV's own claim chart for the '301 patent, IV describes how the ARM Core processor is used with Xilinx's 28 nm programmable logic technology. Liu Decl., Ex. 11 at 1. Moreover, Xilinx provides evidence that devices incorporating the ARM Core processor have not only been announced to the public, but are also being fabricated and tested and the first devices scheduled for production in early 2012. Lui Decl., ¶ 26. The Court finds that Xilinx has made an adequate showing that is has potentially infringing products far enough along in not only the development process but the production process to create a real, concrete and immediate exposure to infringement liability. *Cf. Sierra Applied Scis., Inc. v. Advanced Energy Indus.*, 363 F.3d 1361, 1379 (Fed. Cir. 2004) (party asserting declaratory judgment jurisdiction needs to show that "design of the potentially infringing subject of the declaratory-judgment suit [is] substantially fixed" to support jurisdiction); *see also Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1216 (7th Cir. 1980) (dismissing for lack of case or controversy where "because of the relatively early stage of its development, the design which is before us now may not be the design which is ultimately produced and marketed.").

8

### C. Declaratory Judgment for Invalidity Claims

IV argues that because the Court does not have declaratory judgment jurisdiction over Xilinx's non-infringement claims with respect to the '865, '001 and '301 patents, the Court likewise does not have jurisdiction over Xilinx's claims as to invalidity in Claims Six, Eight and Ten of the SAC. However, because the Court has found sufficient jurisdiction over the non-infringement claims, it has jurisdiction over the invalidity claims asserted in Claims Six, Eight and Ten.

### D. Scope of Declaratory Relief

Finally, defendants ask the Court to dismiss Xilinx's declaratory relief claims to the extent Xilinx seeks declaratory relief of non-infringement for "all" Xilinx products. IV argues that, despite Xilinx's identification of specific products or product families to support each of its non-infringement allegations in the SAC, the non-infringement claims are still impermissibly broad and indefinite. The Court rejects this argument and finds that Xilinx has adequately responded to the concerns expressed in the Court's July 27, 2011 Order and identified specific products and product families that it claims are non-infringing. In the July 2011 Order, the Court noted that Xilinx's total failure to identify any product or product line with specificity did "not allow defendants to assess the true nature of any potential counterclaims that they have, nor can they mount a meaningful defense in the face of such bare allegations." Order at 10. Here, however, Xilinx has identified a specific product or product family which it asserts do not infringe with respect to each of the patents at issue. *See* SAC at ¶¶ 35, 50, 65, 80, 95 & pgs. 15-16. That is sufficient at this stage to allow IV to mount its defense.

For the foregoing reasons, defendants' motion to dismiss the SAC is DENIED.

### 2. Motion to dismiss complaint in 11-4407

### A. Non-infringement claims with respect to '061 patent

Defendants argue that declaratory judgment jurisdiction does not exist for the non-infringement claims as to the '061 patent for the same reasons argued above with respect to the '865 and '001 patents – i.e., that IV and IV Management did not accuse any specific Xilinx product of infringing the '061

9

patent and did not provide a '061 claim chart. *See* MTD FAC at 12-13. However, as above, the Court finds that given the context of the parties' licensing negotiations, Xilinx has presented sufficient evidence to show that IV and IV Management's actions have created a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the exercise of declaratory judgment jurisdiction over Xilinx' invalidity claims with respect to the '061 patent.

### B.  Non-infringement claims with respect to '251 and '331 patents

Defendants argue that declaratory judgment jurisdiction does not exist over the non-infringement claims as to the '251 and '331 patents for the same reasons argued above with respect to the ' 301 patent. *See* MTD FAC at 9-10. However, as above, the Court finds that Xilinx has made an adequate showing that is has potentially infringing products – incorporating the ARM Core processor – far enough along in the development and production process to create a real, concrete and immediate exposure to infringement liability.[4]

### C.  UCL claim

Defendants also move to dismiss pursuant to Rule 12(b)(6) Xilinx's claim under California's Unfair Competition Law (UCL), Business and Professions Code section 17200. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555

In the FAC, Xilinx alleges that order to convince Xilinx to make future investments in IV Funds,

---

[4] IV again argues that declaratory judgment jurisdiction for invalidity claims is lacking because there is no jurisdiction over the non-infringement claims. As above, that argument is rejected. IV also re-raises its argument that Xilinx's non-infringement claims are impermissibly broad in seeking a judgment that "all" Xilinx products do not infringe. As above, the Court rejects that argument and finds that Xilinx's FAC adequately specifies the products and families of products, so that IV can defend this case.

10

defendants IV and IV Management made various misrepresentations – in particular that IV or IV Management owned, had the right to license and the right to enforce the patents at issue in the parties' discussions. FAC, ¶ 146. Xilinx asserts that it was harmed by this conduct because it was forced to "expend time and resources litigating" the jurisdictional issue of who could enforce the patents in the first case (No. 11-0671) on the prior round of motions to dismiss. *Id.*, ¶ 154. Xilinx also asserts that had it known that IV or IV Management "had no rights to enforce" the patents at issue in this case, Xilinx would not have "expended the time and resources to investigate the claims or to negotiate for a possible license." *Id.*, ¶ 155. Xilinx alleges IV and IV Management's conduct was "unfair" under the UCL. *Id.*, ¶ 160.

Conduct is "unfair" under the UCL when either it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law," *see Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 187 (Cal. 1999) (applying heightened standard to "competitor claims"); or when the practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," *see, e.g., Smith v. State Farm Mutual Automobile Ins*. Co., 93 Cal. App. 4th 700, 719 (Cal. App. 2001) (quotation omitted); *see also Distor v. US Bank NA*, 2009 U.S. Dist. LEXIS 98361, 22-23 (N.D. Cal. Oct. 22, 2009) (under this test, the court weighs the utility of the defendant's conduct against the gravity of the harm to the alleged victim). The Ninth Circuit has recognized that California courts have not settled on which test – the heightened *Cel-Tech* test or the more lenient balancing test – applies to claims that the arise in the consumer context and not the competitor-to-competitor context. *See Lozano v. AT&T Wireless Servs*., 504 F.3d 718, 736 (9th Cir. 2007). This Court need not decide which standard applies in this case (*i.e.*, whether Xilinx and IV Management are competitors when IV Management is simply a holding company and produces no products) because Xilinx has failed to allege a UCL claim even under the more lenient standard.

There are two significant problems with Xilinx's UCL claim. First, Xilinx fails to acknowledge that even if a party does not own a patent or is not an assignee with standing to sue on that patent, it can still be a party authorized to engage in licensing discussions. *See, e.g., Propat Int'l Corp. v. RPost US, Inc*., 473 F.3d 1187, 1192 (Fed. Cir. 2007) (recognizing that patent owners may give third parties the

11

1 right to license, select targets of suit and other "power of attorney" powers, without conferring on third
2 parties the right to sue and enforce the patent). Xilinx acknowledges that IV and IV Management are
3 patent holding companies and Xilinx has not alleged any conduct that reasonably exceeds the power of
4 someone authorized to engage in patent licensing discussions on behalf of the patents' owners. In other
5 words, even if IV and/or IV Management did not own or were not the assignee for the patents under
6 discussion, assuming IV is authorized to license the patents at issue the conduct alleged cannot be
7 considered "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."

8 As a second matter, Xilinx has failed to allege sufficient facts to support its allegation of injury
9 from IV and IV Management's misrepresentations. Under the UCL, only someone who has suffered
10 an "economic injury arising from reliance" on a party's misrepresentations has standing to sue. *Kwikset*
11 *Corp. v. Superior Court*, 51 Cal. 4th 310, 327 (2011). Xilinx's first allegation of injury – that Xilinx
12 was forced to expend time and resources litigating jurisdictional issues in No. 11-0671 – is insufficient
13 as a matter of law. Litigation costs cannot form the basis of "harm" under the UCL to confer standing.
14 *See Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 816 (Cal. App. 2007), overruled
15 on other grounds by *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310.[5]

16 Xilinx's second alleged harm is also insufficient. Xilinx alleges simply that if it had been
17 informed that IV and IV Management did not have "rights to enforce" the patents at issue in this case,
18 it would not have expended time and resources to investigate the claims or negotiate licenses. Xilinx,
19 however, ignores the licensing issue. There are no facts alleged to support the assertion that Xilinx
20 would not have engaged in these same investigations and negotiations if – as defendants contend – IV
21 and IV Management were authorized to engage in licensing discussions for the patents.

22 For the foregoing reasons, plaintiff's UCL claim must be dismissed. The Court has significant
23 doubts as to whether Xilinx will be able to amend to cure these deficiencies, but will give plaintiff leave

---

[5] Also, as IV points out, in Xilinx's original complaint in the 11-0671 action, Xilinx itself alleged that IV Management had not shown it had the right to "bring an action" to enforce any of the patents at issue in this case. *See, e.g.*, 11-0671 Docket No. 1, ¶ 38 ('251 patent). It is hard to see how Xilinx was misled by these representations when it apparently knew that IV and/or IV Management were not assignees at least by the time Xilinx filed suit in February 2011. Moreover, the current assignee of a patent can be readily discerned from the United State Patent and Trade Office website. *See* < http://assignments.uspto.gov/assignments/?db=pat>.

to amend.

### D. Discretion to decline declaratory judgment jurisdiction

In its Reply, for the first time, defendants request that if the Court finds that an actual case or controversy exists, it should nonetheless exercise its discretion and decline declaratory judgment jurisdiction. *See EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996) (even if "there is an actual controversy, the district court is not required to exercise declaratory judgment jurisdiction, but has discretion to decline that jurisdiction."). To support their request, defendants argue that any conduct that led to the existence of declaratory judgment jurisdiction was the result of Xilinx asking IV and/or IV Management for a list of patents it should "consider" and the exchange of claim charts requested by Xilinx. This argument, however, overlooks the fact that IV and IV Management started these business negotiations by approaching Xilinx, proposing that there were a number of portfolios that Xilinx should reconsider investing in, and suggesting an "urgency" requiring discussions within the next "few weeks" because IV intended to move forward with "its plans regarding the FPGA industry." Liu Decl., Ex. 1. The IV entities then sued three of Xilinx's competitors in the FPGA industry two weeks later. *Id.,* Ex. 5. The Court concludes that the IV defendants created the circumstances supporting declaratory judgment jurisdiction.

Defendants also argue that the "real" dispute between the parties is in the Delaware action (against Xilinx and its three competitors) and that Xilinx filed in this Court simply to gain a foothold here. Defendants also assert that because Xilinx argued that the *Delaware* action should be stayed pending the USPTO's examination of patents at issue in that case *and* because Xilinx or its counsel have likewise initiated reexamination proceedings on at least six of the seven patents in suit in this case, equity does not counsel proceeding with this case. However, no motion to stay in light of any actions by the USPTO has been made to this Court. If one is made, the Court will consider it. At this juncture, the Court believes this action should proceed and will not exercise its discretion to decline jurisdiction.

### CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion to dismiss the Second

13

Amended Complaint in 11-0671.  The Court GRANTS defendants' motions to dismiss the UCL claim in the First Amended Complaint in 11-4407, and DENIES the remainder of the motion.  If plaintiff wishes to file an amended complaint addressing the deficiencies in its UCL claim it must do so on or before **February 6, 2012.**

**IT IS SO ORDERED.**

Dated: January 25, 2012

SUSAN ILLSTON
United States District Judge