United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| XILINX, INC., | CASE NO(s). 5:11-cv-00671 EJD; 5:11-cv-04407 EJD |
| Plaintiff(s), | **ORDER DENYING DEFENDANTS' MOTIONS TO STAY** |
| v. | |
| INVENTION INVESTMENT FUND I LP, et. al., | |
| | [Docket Item No(s). 148] |
| | [Docket Item No(s). 100] |
| Defendant(s). | |
| XILINX, INC., | |
| Plaintiff(s), | |
| v. | |
| DETELLE RELAY KG, LLC, et. al., | |
| Defendant(s). | |

Within these two related actions for declaratory judgments of non-infringement and invalidity, Intellectual Ventures I LLC and Intellectual Ventures II LLC, the named defendants in case number 5:11-cv-00671 EJD, as well as Detelle Relay KG, LLC, Roldan Block NY, LLC, Latrosse Technologies, LLC, TR Technologies Foundation LLC, Taichi Holdings, LLC, Noregin Assets N.V., LLC and Intellectual Venture Funding LLC, the named defendants in Case Number 5:11-cv-04407 EJD  (collectively, "Defendants"), presently move the court for orders staying the

1

cases in favor of reexamination proceedings before the United States Patent and Trademark Office ("USPTO"). See Docket Item No. 148 in Case No. 5:11-cv-00671 EJD; Docket Item No. 100 in Case No. 5:11-cv-04407 EJD.[1] Plaintiff Xilinx, Inc. ("Plaintiff") opposes the request.

Having reviewed the moving, opposing and reply papers filed by the parties, the court has determined that a stay of these actions is not warranted. Accordingly, the motions will be denied for the reasons explained below.

## I. BACKGROUND

According to the operative complaints, Plaintiff is "engaged in the business of designing, developing, and marketing complete programmable logic solutions." Intellectual Ventures I LLC and Intellectual Ventures II LLC are part of a network of affiliates or holding companies controlled by Intellectual Ventures and Intellectual Ventures Management, which together hold rights to more than 30,000 patents and patent applications. See Second Amended Complaint ("SAC"), Docket Item No. 100 in 11-671, at ¶ 17. The remaining named defendants are holding companies for the various asserted patents and are also allegedly controlled by Intellectual Ventures and Intellectual Ventures Management. See SAC, Docket Item No. 86 in 11-4407, at ¶ 24.

The two cases before this court appear to have grown out of related patent infringement litigation brought by Defendants against Plaintiff and its competitors in the District of Delaware. In these cases, Plaintiff seeks relief as to twelve patents. At issue in 11-671 are U.S. Patent No. 6,252,527 (the "'527 patent"), U.S. Patent No. 6,408,415 (the "'415 patent"), U.S. Patent No. 6,687,865 (the "'865 patent"), U.S. Patent No. 6,698,001 (the "'001 patent"), and U.S. Patent No. 7,080,301 (the "'301 patent"). At issue in 11-4407 are U.S. Patent No. 5,524,251 (the "'251 patent"), U.S. Patent No. 5,751,736 (the "'736 patent"), U.S. Patent No. 5,887,165 (the "'165 patent"), U.S. Patent No. 6,321,331 (the "'331 patent"), U.S. Patent No. 6,747,350 (the "'350 patent"), U.S. Patent No. 6,768,497 (the "'497 patent") and U.S. Patent No. 7,100,061 (the "'061 patent").

Prior to reassignment to the undersigned, Judge Susan Illston heard and decided various

---

[1] In this order, the earlier filed case will be abbreviated as 11-671. The later filed case will be abbreviated as 11-4407.

preliminary motions. On the first motion filed in 11-671, Judge Illston transferred claims to Delaware, dismissed Plaintiff's claims with respect to seven patents (the '251, '736, '165, '331, '350, '497, and '061 patents) because they were not owned by or assigned to any parties to the suit, and dismissed the remaining invalidity claims with leave amend. Plaintiff eventually filed the SAC in 11-671 on September 30, 2011, and Judge Illston denied Defendants' subsequent motion to dismiss the SAC for lack of jurisdiction.

Plaintiff also filed 11-4407 in September, 2011, to re-assert its claims relating to the seven patents dismissed from 11-671 action. After Judge Illston partially granted a motion to dismiss in that case, Plaintiff filed the SAC on February 6, 2012.

Nine of the patents-in-suit between the two cases (the '736, '165, '527, '331, '415, '865, '350, '497 and '301 patents) either are or have been the subject of reexamination proceedings before the USPTO, apparently at the request of Plaintiff.[2] The remaining three patents (the '251, '001 and '061) are not currently in reexamination.

Defendants now move to stay both cases to allow for the completion of the still-pending reexamination proceedings.

## II. LEGAL STANDARD

As in other contexts, whether to grant a stay pending the reexamination of a patent is entrusted to the discretion of the district court. See Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."). A stay is therefore never required but may be "particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue." Cygnus Telecomms. Tech., LLC v. United World Telecom, L.C. (In re Cygnus Telecomms. Tech., LLC, Patent Litig.), 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) (citing Gould v. Control Laser Corp., 705 F.2d 1340,

---

[2] It appears that reexamination proceedings have concluded for the '331 patent. The Ex Parte Reexamination Certificate issued by the USPTO on July 10, 2012, indicates that, while some claims were amended, none of the claims were cancelled. See Decl. of Iman Lordgooei, Docket Item No. 155 in 11-671, Docket Item No. 107 in 11-4407, at Ex. G.

1342 (Fed. Cir. 1983)). In addition, the court may ultimately benefit at trial from the expert opinion of the PTO especially when a review of prior art is necessary. See In re Etter, 756 F.2d 852, 857 (Fed. Cir. 1985) ("When the patent is concurrently involved in litigation, an auxiliary function [of the reexamination] is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration.").

Three factors are considered to determine the appropriateness of a stay: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues and the ensuing trial, and (3) whether discovery is complete and whether a trial date has been set. Cygnus, 385 F. Supp. 2d at 1022.

There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." ASCII Corp. v. STD Entm't, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994). This is because "Congress instituted the reexamination process to shift the burden or reexamination of patent validity from the courts to the PTO." Canady v. Erbe Elektromedizin GmbH, 271 F. Supp. 2d 64, 78 (D.D.C. 2002). However, as this court has noted, "some courts have begun to rethink that [liberal] policy in recent years." Avago Techs. Fiber IP (Singapore) PTE, Ltd. v. IPtronics, Inc., Case No. 5:10-cv-02863 EJD, 2011 U.S. Dist. LEXIS 82665, at *11, 2011 WL 3267768 (N.D. Cal. July 28, 2011) (citing Network Appliance Inc. v. Sun Microsystems Inc., Case No. C-07-06053 EDL, 2008 U.S. Dist. LEXIS 76717, 2008 WL 2168917 (N.D. Cal. May 23, 2008)).

### III. DISCUSSION

#### A. Prejudice or Tactical Disadvantage

The court begins by examining the prejudice or tactical disadvantage to Plaintiff that may result from a stay. Plaintiffs articulation of prejudice or disadvantage is multi-faceted. First, Plaintiff argues that the timing of Defendants' request to stay - over a year after this action and most of the reexaminations were filed - demonstrates it is in actuality a tactical attempt "to delay or stop this action in favor of the action in Delaware," where Defendants are asserting four separate patents against Plaintiff. Second, Plaintiff believes abatement of this litigation would provide Defendants an advantage in the six *ex parte* reexaminations which remain pending because Defendants, having

4

already received Plaintiff's invalidity contentions in this proceeding, could then unilaterally argue against Plaintiff's theories before the USPTO while simultaneously depriving Plaintiff of a court forum.[3] Third, Plaintiff contends that a stay can hinder its ability to collect and preserve evidence in support of this case. Finally, Plaintiff argues it will be deprived of the timely resolution necessary to adjust its business activities if necessary.

For their part, Defendants disagree that Plaintiff would be unduly prejudiced by a stay of these cases. In particular, Defendants take issue with the characterization of this motion as a tactical maneuver and explain that the timing of the motion was "dictated by the natural procedural development of the case." Defendants also note that none of the *ex parte* reexaminations will prevent Plaintiff from presenting all of its invalidity arguments in this case. In addition, Defendants do not believe that a stay will prevent Plaintiff from preserving evidence.

The court concurs with Defendants in part. Plaintiff will not be prejudiced in this case by the outcome of the currently-pending *ex parte* reexaminations since those reexaminations will have no effect on Plaintiff's ability to raise invalidity arguments before this court. In addition, Plaintiff's concern about lost evidence is not sufficient grounds to deny a stay considering Plaintiffs failed to provide any meaningful discussion of this issue. But these determinations notwithstanding, the court nonetheless concludes that Plaintiff has demonstrated a tactical disadvantage that will result from a stay. While it is certainly true that "a general claim of delay is not enough on its own to constitute undue prejudice," Plaintiffs have gone beyond such a superficial claim here. <u>Convergence Techs. (USA), LLC v. Microloops Corp.</u>, No. 5:10-cv-02051 EJD, 2012 U.S. Dist. LEXIS 51794, at *7, 2012 WL 1232187 (N.D. Cal. Apr. 12, 2012). Indeed, the timing of this motion when coupled with other relevant circumstances is suggestive of the strategy described by Plaintiff. See <u>Interwoven, Inc. v. Vertical Computer Sys., Inc.</u>, No. C 10-04645 RS, 2012 U.S. Dist. LEXIS 30946, at *6, 2012

---

[3] "[I]n an *ex parte* [reexamination] proceeding a third party is not allowed to present its side of the case; only the patent holder is involved in the proceeding." <u>Pacific Bioscience Laboratories, Inc. v. Nutra Luxe MD, LLC</u>, No. C10-0230JLR, 2011 U.S. Dist. LEXIS 3564, at *12 n.2, 2011 WL 65947 (W.D. Wash. Jan. 10, 2011) (citing <u>Wabco Holdings, Inc. v. Bendix Commercial Vehicle Systems</u>, LLC, No. 09-3179 (DMC), 2010 U.S. Dist. LEXIS 64036, 2010 WL 2628335 (D.N.J. June 28, 2010)). As a result, "a defendant is not estopped from challenging patent validity in a future civil action following an *ex parte* reexamination." <u>Id</u>.

5
Case Nos. 5:11-cv-00671 EJD; 5:11-cv-04407 EJD
ORDER DENYING DEFENDANTS' MOTIONS TO STAY

WL 761692 (N.D. Cal. Mar. 8, 2012) ("That Interwoven waited until after receiving an unfavorable ruling to request reexamination lends credence to Vertical's contention that the current motion is simply a delaying strategy."). Over a year into this litigation, Defendants have made this request only after the occurrence of three events significant to Defendant's role in these cases: (1) the Delaware district court denied a motion to stay the infringement case, thereby ensuring that the litigation involving Defendants' asserted patents will proceed, (2) this court's predecessor denied a motion to dismiss for lack of subject matter jurisdiction, confirming that Defendants will need to put on a defense at some point; and (3) Defendants received invalidity contentions, giving them insight into Plaintiff's ultimate theories. In light of these developments, and considering almost all of the reexaminations were initiated in early 2011, there appears no other reasonable explanation for the delay in seeking this relief. Accordingly, this factor weighs heavily against a stay.

### B. Simplification of Issues

The court now examines whether a stay in favor of reexamination will simplify or streamline this litigation. In that regard, the court is mindful that "[t]o truly simplify the issues . . . the outcome of the reexamination must 'finally resolve all issues in the litigation.'" Yodlee, Inc. v. Ablaise Ltd., Nos. C-06-07222 SBA, C-06-02451 SBA, C-07-01995 SBA, 2009 U.S. Dist. LEXIS 5429, at *12, 2009 WL 112857 (N.D. Cal. Jan. 16, 2009) (quoting Gladish v. Tyco Toys Inc., No. CIV. S-92-1666 WBS/JFM, 1993 U.S. Dist. LEXIS 20211, 1993 WL 625509 (E.D. Cal. Sept. 16, 1993)). Thus, notable is the fact that four of the patents-in-suit are not currently undergoing reexamination; the court will have to resolve all claims in dispute as to those patents. That being the case, waiting for the outcome of reexamination does nothing for that portion of the litigation.

Moreover, Defendants' optimism as to the potential for rejection, cancellation or significant amendment to claim terms as a result of the reexaminations must be tempered by the results of reexaminations already completed. Only one of over thirty claim terms was cancelled after the first reexamination of the '527 patent. Only three of the original claim terms were cancelled after reexamination of the '251 patent and meaningful amendment of other claim terms did not materialize. For the '331 patent, reexamination only resulted in the amendment of three claim terms without cancellation or rejection. Based on this history, it seems more likely than not that litigation

will occur over most of the claim terms in their current form.

Because it does not appear that reexamination will case significant change to this case or the issues, this factor also weighs against a stay.

### C. Procedural Posture

Finally, the court considers the current status of these cases. There is some history here, including initial motion practice, the exchange of preliminary contentions and completion claim construction discovery according to the current scheduling order. Thus, the parties have invested some significant effort into this litigation despite the fact that reexaminations have been pending.

At the same time, however, discovery is not complete, claim construction briefing has not yet occurred and the hearing on claim construction is still months away. Thus, while these cases have each been pending for over a year, they have "not reached the 'point of no return' for which a stay would [be] inappropriate due to a progressed procedural posture." Convergence, 2012 U.S. Dist. LEXIS 51794, at *7. This factor, therefore, weighs in favor of a stay.

### D. Conclusion

In review, two of the relevant factors weigh against a stay. The circumstances within which Defendants' present this request are suggestive of tactical maneuvering to Plaintiff's detriment, and it does not appear that the current reexamination proceedings will have the significant impact claimed by Defendants. Although the procedural posture of these cases tends to favor abatement, it is far outweighed by the preceding factors. Defendants' motions will therefore be denied.

## IV. ORDER

Based on the foregoing, Defendants' Motions to Stay are DENIED.

**IT IS SO ORDERED.**

Dated: November 30, 2012

EDWARD J. DAVILA
United States District Judge

7
Case Nos. 5:11-cv-00671 EJD; 5:11-cv-04407 EJD
ORDER DENYING DEFENDANTS' MOTIONS TO STAY